**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MAUREEN MAIGNAN,<br><br>          PLAINTIFF,<br><br>   v.<br><br>THE HOSPITAL OF THE UNIVERSITY<br>OF PENNSYLVANIA,<br><br>          DEFENDANT. | Civil Action No. _____<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiff Maureen Maignan, by and through her attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1.      This is an action for an award of damages, punitive damages and other relief on behalf of Plaintiff Maureen Maignan (hereinafter "Plaintiff" or "Ms. Maignan"), a former employee of The Hospital of the University of Pennsylvania (hereinafter "HUP" or "Defendant"). Despite her loyalty and consistent performance, Ms. Maignan was subjected to discrimination and harassment on the basis of her race, and to retaliation for complaining about discrimination and harassment, culminating in her wrongful termination on November 9, 2023.

2.      This action is filed pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), et. seq. ("Title VII"), and the Philadelphia Fair Practices Ordinance ("PFPO").

## JURISDICTIONAL STATEMENT

3.    This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 29 U.S.C. §§ 1331 and 1391.

4.    The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5.    This Court has supplemental jurisdiction over any Pennsylvania state law and local law claims pursuant to 28 U.S.C. § 1367.

6.    All conditions precedent to the institution of this suit have been fulfilled. On May 17, 2024, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Philadelphia Commission on Human Relations ("PCHR"). On January 22, 2026, the PCHR issued a Notice of Right to Sue to Plaintiff.  On February 5, 2026, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notices.

## VENUE

7.    This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8.    This action properly lies in the Eastern District of Pennsylvania because significant activities associated with the claims alleged took place in this jurisdiction and because Plaintiff was employed and terminated by Defendant in this jurisdiction.

**PARTIES**

9.      Plaintiff Maureen Maignan is an adult African American female citizen and resident of Philadelphia, Pennsylvania and the United States of America.

10.      Defendant The Hospital of the University of Pennsylvania ("HUP" or "Defendant") is a medical facility located at 3400 Spruce Street, Philadelphia, Pennsylvania 19104.

11.      At all relevant times, Defendant is and has been an employer employing more than 500 employees.

12.      At all relevant times, employees of Defendant acted as agents and servants for Defendant.

13.      At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of their employment under the direct control of Defendant.

14.      At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

15.      At all relevant times hereto, Plaintiff was an "employee" of Defendant within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

16.      At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

17.      This Honorable Court has personal jurisdiction over the Defendant.

3

**FACTS**

18.    On or about November 29, 2021, Ms. Maignan was hired by Defendant as a Registered Nurse.

19.    While employed by HUP, Ms. Maignan performed her duties in a dedicated and professional manner.

20.    Despite her loyalty and consistent performance, Ms. Maignan was subjected to discrimination and harassment on the basis of her race, and was retaliated against for complaining about discrimination and harassment, culminating in her wrongful termination on November 9, 2023.

21.    Throughout her employment, Ms. Maignan experienced a hostile and toxic work environment where she was made to feel uncomfortable, frightened, and intimidated by her manager, Matthew Walker.

22.    Mr. Walker was extremely critical of Ms. Maignan and repeatedly berated Ms. Maignan for her work performance.

23.    In contrast to the treatment of her Caucasian peers, Ms. Maignan was constantly pulled into Mr. Walker's office for minor and unsubstantiated complaints.

24.    Mr. Walker would reprimand Ms. Maignan for patient complaints without affording Ms. Maignan the opportunity to respond.

25.    For example, in Room 918, a family member complained that Ms. Maignan did not check on a patient when, in fact, she had checked on the patient and the hourly rounds were documented.  The ambulatory stat was completed at that time.

26. On another occasion, Mr. Walker accused Ms. Maignan of acting like she did not want to be bothered during her morning medication pass when, in fact, Ms. Maignan had simply been focused on making sure that all morning medications were administered on time.

27. One patient complained that he had requested but was denied a bath.

28. Ms. Maignan had explained to the patient that it would be challenging to give a bath at that point in time because the faculty was short-staffed and there was only one CNA on the floor.

29. There was one patient who allegedly stated that he did not want Ms. Maignan as a nurse, even though the patient was off the floor most of the day for his dialysis, and when he returned to the floor, Ms. Maignan gave him his medication.

30. Ms. Maignan was admonished for issues that were uncorroborated and that she could have easily explained or rebutted, had she been given the chance.

31. Moreover, this lambasting of Ms. Maignan for patient "complaints" or alleged work performance issues was not similarly imposed upon Ms. Maignan's non-African American colleagues who were afforded more understanding and were virtually exempt from discipline, even if they had committed serious and unsafe nursing practices.

32. For example, Jena, a Caucasian nurse, left an IV in a patient's arm and sent the patient home.

33. Despite the egregious nature of this act, this incident did not result in a write up or investigation.

34. Another example occurred when a patient stated they did not want Molly, a Caucasian nurse, to care for them.

5

35. Unlike with Ms. Maignan, who was pulled into the office and investigated when a patient allegedly did not want Ms. Maignan as their nurse, Molly was not pulled into the office or investigated.

36. Jere, an African American travel nurse, was terminated immediately for not progressing in her training.

37. Meanwhile Caroline, an Asian nurse who was not progressing in her training, was given extra time.

38. The acts of Defendant made clear that the African American employees were treated differently.

39. On or about October 15, 2023, CNA Idea Neider was using a workstation on wheels ("WOW") and slammed the workstation into Ms. Maignan.

40. Ms. Maignan had already moved the workstation twice in an attempt to prevent it from obstructing the path to her seat.

41. Ms. Maignan raised her voice, and Ms. Neider yelled at Ms. Maignan.

42. The following day, Ms. Maignan was put on administrative leave and referred to the Employee Assistance Program ("EAP"), while Ms. Neider was not disciplined at all.

43. Ms. Maignan returned to work on November 2, 2023, and was given a final written warning for the October 15 incident.

44. The write up demonstrated that the investigation was completely one-sided, focusing only on how Ms. Maignan had reacted to being assaulted, and mentioning nothing about the conduct directed at Ms. Maignan.

45. The write up stated that the workstation had bumped into the chair that Ms. Maignan was sitting in – a clear effort by Defendant to avoid admitting that the workstation had hit Ms. Maignan.

46. The write up focused on and overly dramatized the hurt feelings of Ms. Neider, the CNA who pushed the cart into Ms. Maignan, stating that she was "extremely embarrassed and very uncomfortable," while purposefully omitting that the CNA had yelled at Ms. Maignan.

47. Mr. Walker told Ms. Maignan that if being a team player was not something she was interested in, she should start looking for another job.

48. Ms. Maignan felt threatened and intimidated.

49. After returning to work for only one day, Ms. Maignan received a text from Mr. Walker on November 3, 2023 to call him urgently.

50. When Ms. Maignan called him, Mr. Walker informed her not to return to work on grounds that two alleged safety issues had been found.

51. Neither of the safety issues were accurate as stated.

52. First, Ms. Maignan was informed that she had failed to notify a provider that a patient refused AVAPS.

53. In fact, the patient had worn the AVAPS from 8:50 p.m. through 1 a.m., and the AVAPS was put back on at 6:50 a.m., but was removed by the patient at 7 a.m.

54. Second, Ms. Maignan was informed that she had failed to dual-sign regarding a Heparin change, though the documentation had been fully completed in the flowsheet.

55. The urgent nature of the call wholly deviated from HUP's practice, wherein a Clinical Nurse Specialist would share a safety issue with a Registered Nurse via email or in person at their next encounter.

56.     Further, individuals are never taken off the schedule for a safety issue, yet Ms. Maignan was told that she was not to return to work.

57.     On or about November 6, 2023, Ms. Maignan submitted a managerial decision review request form about the final written warning she had been issued, and complaining about the discrimination and harassment to which she was being subjected.

58.     Ms. Maignan also contacted the EAP counselor, who advised Ms. Maignan that her manager, Mr. Walker, had created a toxic work environment, and suggested that Ms. Maignan no longer communicate with Mr. Walker over the phone or alone in person.

59.     Ms. Maignan informed Mr. Walker that the EAP counselor recommended that all communication between Ms. Maignan and Mr. Walker moving forward should occur through email or text message.

60.     In a clear act of retaliation, Mr. Walker informed Ms. Maignan that he was keeping her off the schedule.

61.     On November 8, 2023, Mr. Walker texted Ms. Maignan and asked to speak on the phone.

62.     Ms. Maignan asked for updates to be sent via email, a request she had already communicated to Mr. Walker.

63.     Mr. Walker responded that he would not be using email to convey updates.

64.     On November 9, 2023, Ms. Maignan was terminated.

65.     On or about November 15, 2023, a managerial decision review meeting was held with Janelle Harris, Clinical Director of Advanced Medical Nursing, for Ms. Maignan to appeal the disciplinary actions against her and to contest the safety issues that resulted in her termination.

66.     Ms. Maignan received a letter from Ms. Harris dated November 21, 2023 upholding the termination decision.

67.     Based on the foregoing, including the hostile and differential treatment Ms. Maignan experienced during her employment with HUP, the unjustified grounds for her final written warnings and her termination, Ms. Maignan maintains that she was discriminated against and harassed on the basis of her race, and retaliated against for complaining about discrimination and harassment, in violation of Title VII, Section 1981 and the PFPO.

68.     Ms. Maignan has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

69.     Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Maignan severe emotional distress.

70.     Defendant willfully violated Title VII, Section 1981, and the PFPO, as Defendant knew that its actions violated the statutes and/or acted with reckless disregard as to whether its actions violated Title VII, Section 1981, and the PFPO.

71.     Ms. Maignan has suffered financial losses, which include, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendant.

**COUNT I**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), <u>et seq.</u>**

72.     Plaintiff Maureen Maignan repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

73.     Based on the foregoing, Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

74.     In discriminating against and harassing Ms. Maignan because of her race, and in retaliating against Ms. Maignan for her complaints of discrimination and harassment, Defendant violated Title VII.

75.     Defendant's violations were intentional and willful.

76.     Defendant's violations warrant the imposition of punitive damages.

77.     As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant, Plaintiff Maureen Maignan has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
### Civil Rights Act of 1866, 42 U.S.C. § 1981

78.     Plaintiff Maureen Maignan repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

79.     Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981").

80.     In discriminating against and harassing Ms. Maignan on the basis of her race, and in retaliating against Ms. Maignan for her complaints of discrimination and harassment, Defendant violated Section 1981.

81.     Said violations were intentional and willful.

82.     Said violations warrant the imposition of punitive damages.

10

83.      As a direct and proximate result of the unlawful employment practices engaged in by Defendant, Plaintiff Maureen Maignan has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon.

84.      Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT III
### PHILADELPHIA FAIR PRACTICES ORDINANCE
### Philadelphia Code §§ 9-1100, et seq.

85.      Plaintiff Maureen Maignan repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

86.      Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Philadelphia Fair Practices Ordinance.

87.      In discriminating against and harassing Ms. Maignan because of her race, and in retaliating against Ms. Maignan for her complaints of discrimination and harassment, Defendant violated the PFPO.

88.      As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant, Plaintiff Maureen Maignan has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

## **PRAYER FOR RELIEF**

89.     Plaintiff Maureen Maignan repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Maureen Maignan respectfully requests that this Court enter judgment in her favor and against Defendant The Hospital of the University of Pennsylvania, and Order:

a.  Appropriate equitable relief, including reinstatement or front pay;

b.  Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment, and retaliation;

c.  Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;

d.  Defendant to pay Plaintiff punitive damages;

e.  Defendant to pay Plaintiff liquidated damages;

f.  Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

g.  Defendant to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

h.  Plaintiff be granted any and all other remedies available under Title VII, Section 1981, and the PFPO; and

i.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff Maureen Maignan hereby demands trial by jury as to all issues so triable.

BELL & BELL LLP

By:    */s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA 19103
(215) 569-2285

*Attorneys for Plaintiff Maureen Maignan*

Dated: April 17, 2026